UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROBERT RAY BRYANT,

    Petitioner,

v.                                                                                  Case No. 8:23-cv-620-CEH-AAS

SECRETARY, DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

**ORDER**

Petitioner, a Florida prisoner, initiated this action by filing a petition for a writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1) and a memorandum in support (Doc. 2). Respondent filed a response opposing the petition (Doc. 6), to which Petitioner replied (Doc. 7). Upon consideration, the petition will be denied.

**I. BACKGROUND AND PROCEDURAL HISTORY**

An Information charged Petitioner on January 27, 2017, with sexual battery on a person physically helpless to resist (Doc. 6-2, Ex. 4).[1] The Information stated that the sexual battery occurred on July 5, 2016 (*Id.*, Ex. 4). A capias for Petitioner's arrest was issued on January 27, 2017 (*Id.*, Ex. 3). Petitioner was not arrested until August 2, 2019, about 31 months after he was charged (*Id.*, Ex. 5).

---

[1] For purposes of reference to pleadings and exhibits, the Court will cite the document page numbers assigned by the Court's electronic docketing system.

On September 24, 2019, Petitioner, through his public defender, filed a motion to dismiss the charge, arguing a speedy trial violation under the Sixth Amendment to the United States Constitution and Rule 3.190, Florida Rules of Criminal Procedure (*Id.* Ex. 6). Following a hearing on November 4, 2019, the motion was denied on November 15, 2019 (*Id.*, Exs. 7-8). On March 4, 2020, Petitioner was convicted as charged (*Id.*, Ex. 10). He was sentenced to 15 years in prison followed by 10 years on sexual offender probation (*Id.*, Ex. 18 at 492; Ex. 20 at 509). The conviction and sentence were affirmed on appeal (*Id.*, Ex. 30).

Petitioner filed a motion for post-conviction relief under Rule 3.850, Fla.R.Crim.P., asserting two claims of ineffective assistance of trial counsel (*Id.*, Ex. 34). The state post-conviction court denied both claims (*Id.*, Ex. 36). The denial of the Rule 3.850 motion was affirmed on appeal (*Id.*, Ex. 43).

Petitioner filed his federal habeas petition and memorandum in this Court (Docs. 1-2), alleging one ground for relief.

## II. GOVERNING LEGAL PRINCIPLES

Because Petitioner filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003). The AEDPA "establishes a more deferential standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001), to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing that the federal habeas court's evaluation of state-court

rulings is highly deferential and that state-court decisions must be given the benefit of the doubt).

Under the AEDPA, habeas relief may not be granted regarding a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Sec'y for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

If the federal court concludes that the state court misapplied federal law, habeas relief is appropriate only if that application was "objectively unreasonable." *Id*.

3

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." However, a determination of a factual issue made by a state court shall be presumed correct, and the habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

## III. ANALYSIS

**GROUND ONE: PETITIONER'S SIXTH AMENDMENT RIGHT TO A SPEEDY TRIAL WAS VIOLATED WHEN THE STATE WAITED 31 MONTHS AFTER THE ISSUANCE OF THE CAPIAS AND 37 MONTHS AFTER THE INCIDENT OCCURRED TO TAKE PETITIONER TO TRIAL, REQUIRING DISMISSAL OF THE INFORMATION AND PETITIONER'S IMMEDIATE DISCHARGE.**

Petitioner contends his right to a speedy trial under the Sixth Amendment was violated. In state court, he raised this claim in a motion to dismiss the Information (Doc. 6-2, Ex. 6). In denying the motion, the state trial court stated:

> Detective Branch testified that he was called to the crime scene on July 5, 2016. He spoke to both the alleged victim and the Defendant. He told Defendant of the accusation. Defendant permitted Branch to take buccal swabs to compare to DNA found on the victim. Branch got the swabs in August 2016 and sent them to the lab at the Florida Department of Law Enforcement. The initial interview and taking of the buccal swabs were his only contacts with Defendant. He received the test results in November 2016. Branch sent the information to the State Attorney's Office. Branch testified that he was aware of the arrest warrant's issuance in January 2017.
>
> Branch testified as to his agency's efforts to execute the warrant. A deputy went to Defendant's address on January 30, 2017, but he was not home. Another deputy looked for Defendant on May 16, 2017, regarding an out-of-county warrant. Then, on May 30, 2017, Defendant's grandfather called to say that Defendant was at home. Members of the Crime Suppression Unit came out to the residence, but Defendant was gone by the time they arrived.

No further attempts to arrest Defendant were documented. Branch testified that he knew several of the Crime Suppression Unit officers. He stated that those officers typically go out to follow up "several times," but do not always document their efforts. Branch also had "heard" that Defendant left Polk County and relocated to "the Tampa Bay area." Branch was unaware of any efforts to locate Defendant during all of 2018.

Both parties cited to Barker v. Wingo, 407 U.S. 514 (1972), in which the United States Supreme Court identified four factors to consider as to whether a defendant has been deprived of his Sixth Amendment right to a speedy trial. Those factors are:

1. The length of the delay;
2. The reason for the delay;
3. The defendant's assertion of his right; and
4. Prejudice to the defendant.

Barker, 407 U.S. at 530. All four factors "must be considered together with such other circumstances as may be relevant . . . courts must . . . engage in a difficult and sensitive balancing process." Id. at 533.

The significance of the length of delay varies depending on the nature of the charge; "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." Id. at 530-531. The prejudice factor "should be assessed in the light of the interests of defendants." Id. at 532. Three such interests are: (i) prevention of oppressive pretrial incarceration; (ii) minimization of the accused's anxiety and concern; and (iii) limiting the possibility that the defense will be impaired. Id.

The Court finds that the length of the delay in this case is presumptively prejudicial under the case law. Defendant was finally arrested about 37 months after his first interview with Branch, and 31 months after charges were filed against him.

Law enforcement's efforts to locate Defendant stopped in May of 2017, after three attempts to locate him. The Court finds the stalled efforts were mildly negligent, as opposed to deliberate or justified. See Howell v. State, 418 So. 1164, 1171-1173 (Fla. 1st DCA 1982). No evidence shows that Defendant deliberately avoided the warrant, notwithstanding Branch's testimony that he heard Defendant had relocated to the Tampa Bay area. He still lived with his grandfather in May 2017, four months after the warrant issued. However, several unsuccessful attempts to find Defendant were made, and there is no bright-line rule for how many times law enforcement must keep trying after several failed efforts.

Defendant promptly asserted his right after his arrest. He was arrested on August 2, 2019; appointed the services of the Public Defender's Office at his First Appearance hearing the following day; and his attorney filed the present Motion about seven weeks later.

Other than a claim of legal presumptive prejudice, Defendant has not shown actual prejudice. Defendant did not testify at the hearing. Therefore, no evidence has been presented regarding oppressive pretrial incarceration, anxiety and concern on Defendant's part, or any negative effect of the delay upon the defense.

In State v. Roundtree, 438 So. 2d 68 (Fla. 2d DCA 1983), a delay of 21 months between the issuance of an arrest warrant and defendant's eventual arrest was held to be presumptively prejudicial. The Second District Court of Appeal characterized the case as being relatively simple to prosecute. Roundtree followed the rule of law expressed in Howell (though not the result; Howell lost): "... when the first ... three factors are *heavily* weighted in favor of the accused, the necessity for a demonstration of actual prejudice is not required." Roundtree, 438 So. 2d at 71 (quoting Howell, 418 So. 2d at 1174)). The facts of Roundtree are distinguishable from the present case. The officer knew Defendant lived with his parents, but never inquired about him at that address. Neither did the officer try to locate defendant through the Department of Corrections even though defendant was on supervision. Nor did the officer follow up on a tip from the victim that defendant frequented a particular bar.

The Second District Court of Appeal revisited this issue more recently in State v. Stuart, 115 So. 3d 420 (Fla. 2d DCA 2013). In Stuart, the State did not file an information until 14 months after defendant participated in an undercover drug deal. Stuart was not arrested until another 14 months had passed. The court said that "the focal point is undue prejudice to the criminal defendant." Stuart, 115 So. 3d at 423. The trial court's granting of Stuart's motion to dismiss was reversed because Stuart "fails to show how any delay actually and materially prejudiced his defense." Stuart, 115 So. 2d (sic) at 425.

Howell affirmed the denial of defendant's motion to dismiss even though the first three factors set forth in Barker were deemed to weigh in favor of the defendant: Because they did not weigh "heavily" in Howell's favor and Howell did not establish actual prejudice, there was no constitutional violation. Howell, 418 So. 2d at 1174-1175.

Also, in Kennedy v. Bonnano, 571 So. 2d 14 (Fla. 2d DCA 1990), the trial court's denial of a motion to dismiss under circumstances similar to the present case was affirmed. In Kennedy, there were findings of presumptive

6

> prejudice, a timely assertion of right, and negligence on the part of the State. However, the trial court still denied defendant's motion to dismiss because it found the defendant did not establish actual prejudice. In Kennedy, about eight years passed between the filing of an information and defendant's arrest. The Second District Court of Appeal found no error in the trial court's requiring a showing of actual prejudice. Kennedy, 571 So. 2d at 15.
>
> Based on the above, it is **ORDERED AND ADJUDGED** that Defendant's Motion is **DENIED**.

(Doc. 6-2, Ex. 8) (emphasis in original). Petitioner raised the issue on direct appeal (*Id.*, Ex. 27). The state appellate court affirmed without a written opinion (*Id.*, Ex. 30).

The state courts' denial of this claim was reasonable. A criminal defendant has a Sixth Amendment right to a speedy trial. *Barker v. Wingo*, 407 U.S. 514, 515 (1972). To determine whether a defendant has been denied his right to a speedy trial, a court must weigh four factors: (1) the length of the delay, (2) the reason for the delay, (3) whether the defendant timely asserted his speedy trial right, and (4) any prejudice resulting from the delay. *Id*. at 530–33. An unreasonable delay can produce several harms, including oppressive pretrial incarceration and possibly impairing a defense by dimming memories and losing evidence. *Id*. at 533. Prejudice need not be actual; instead, it can be presumed depending on the length of time and reasons for the delay. *Doggett v. United States*, 505 U.S. 647, 654 (1992). "Delays exceeding one year are generally found to be 'presumptively prejudicial.'" *United States v. Ingram*, 446 F.3d 1332, 1336 (11th Cir. 2006) (citing *Doggett*, 505 U.S. at 651–52). But unless all three *Barker* factors weigh heavily against the State, the petitioner must demonstrate actual prejudice to prevail. *Ingram*, 446 F.3d at 1338.

The state trial court correctly found that the delay from when the Information was filed until Petitioner was arrested was about 31 months and presumptively prejudicial (Doc.

6-2, Ex. 8 at 56). But the trial court implicitly assigned the second *Barker* factor little weight when it found that the State's "efforts [to arrest Petitioner] were mildly negligent, as opposed to the delay being deliberate or justified." (*Id.*, Ex. 8 at 56). The trial court's finding was supported by Detective Branch's testimony that officers went to Petitioner's residence at least three separate times (January 30, 2017; May 16, 2017; May 30, 2017) to arrest him but failed because Petitioner was not there (*Id.*, Ex. 7 at 39). Detective Branch added that there may have been additional attempts to arrest Petitioner, but the "Crimes Suppression Team" did not always document their efforts (*Id.*, Ex. 7 at 39). Detective Branch also testified that he believed Petitioner's grandfather said Petitioner had moved out of the county (*Id.*, Ex. 7 at 40). Considering this evidence, the state trial court's determination that the second *Barker* factor weighed against Petitioner was reasonable. *See, e.g.*, *United States v. Lazzara*, 709 F. App'x 578, 581 (11th Cir. 2017) ("[W]hile the Government may have been able to do more to locate Lazzara, its actions were, at best, only negligent, and should not be weighed as heavily as acts done in bad faith.").

Because the second *Barker* factor did not weigh heavily against the State, Petitioner had to demonstrate actual prejudice. *Ingram*, 446 F.3d at 1338. "In evaluating actual prejudice under the fourth *Barker* factor, [courts] consider three policy interests that the right to a speedy trial protects: (1) the prevention of oppressive pretrial incarceration; (2) the minimization of the accused's anxiety and concern; and (3) the limitation of any possible impairment of the defense." *Lazzara*, 709 F. App'x at 581–82 (citing *United States v. Schlei*, 122 F.3d 944, 988 (11th Cir. 1997)). The state trial court considered these interests and correctly found that Petitioner failed to show actual prejudice because no evidence was

8

"presented regarding oppressive pretrial incarceration, anxiety and concern on [Petitioner's] part, or negative effect of the delay upon [Petitioner]." (Doc. 6-2, Ex. 8 at 56; Ex. 7).

Petitioner has not shown that the state court's resolution of his speedy trial claim was contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or based on an unreasonable determination of the facts. Ground One, therefore, warrants no relief.

Accordingly:

1. The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**. The Clerk of the Court is directed to enter judgment against Petitioner and close this case.

2. This Court should grant an application for a Certificate of Appealability (COA) only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). He cannot make this showing. Accordingly, a COA is **DENIED**. And because Petitioner is not entitled to a COA, he may not proceed on appeal *in forma pauperis*.

**DONE** and **ORDERED** in Tampa, Florida on May 2, 2025.

Charlene Edwards Honeywell
United States District Judge

Copies to: Petitioner, *pro se*
           Counsel of Record